STATE OF NORTH CAROLINA v. DEWEY ABSHER

No. 7525SC200

(Filed 18 June 1975)

Constitutional Law § 33; Criminal Law § 48— accusations by companion — silence of defendant — evidence prejudicial

  Where defendant was in custody and had been advised of his constitutional rights, he was under no duty to make a response in the face of accusations made by his companion, and admission of testimony by two officers concerning such accusations and defendant's silence was prejudicial error.

ON *writ of certiorari* to review the order of *Falls, Judge.* Order entered 4 December 1973 in Superior Court, CALDWELL County. Heard in the Court of Appeals 7 May 1975.

Defendant was charged in a bill of indictment with (1) breaking and entering an automobile and (2) larceny of one pair of Birolux binoculars that were under the front seat of the automobile. He was found guilty, and a two-year sentence was imposed.

The issues raised by this appeal concern the admissibility of accusations made by the defendant's companion in front of

the defendant and police officers, and the defendant's failure to deny those accusations.

Facts necessary for the determination of these issues are set forth in the opinion.

*Attorney General Edmisten, by Associate Attorney Noel Lee Allen, for the State.*

*Ted S. Douglas, for the defendant-appellant.*

BROCK, Chief Judge.

This prosecution arose out of the theft of one pair of Biro-lux binoculars, valued at $30.00, from a locked automobile belonging to one Alvin McMillian, Jr. The car was parked beside a road near Brown Mountain Gorge in Caldwell County. The windows were rolled down slightly, and the binoculars were under the front seat. McMillian had left the car to locate an appropriate place for a picnic when the theft occurred. On his way back from Brown Mountain Gorge, McMillian saw a deputy sheriff of Caldwell County. He reported the theft and was asked to come to the sheriff's department to file a formal statement. While there, McMillian was shown a pair of binoculars that had just been retrieved from the defendant's car. McMilian identified them as the ones that had been stolen.

The defendant offered little evidence; he merely denied stealing the binoculars and said he had noticed the binoculars in his car while he was driving near Brown Mountain Gorge, but did not know how they had gotten there.

Defendant asserts that substantial error was committed when the trial judge allowed both Charles Thompson, deputy sheriff of Caldwell County, and Mark Gentry, an employee of the sheriff's department, to testify as to accusations made by one Oscar Hunt, defendant's companion, and to defendant's failure to deny the accusations. Thompson, Gentry, and defendant were present when Hunt made his accusations of defendant. It was for that reason, and apparently because he considered defendant's lack of denial an admission, that the trial judge allowed the testimony to be admitted. Hunt did not appear as a witness at the trial, and he was not charged with any offense.

The evidence indicates that after the defendant and Hunt were stopped by the deputy sheriff, they were taken to the sheriff's department. Both were given the *Miranda* warnings. Ac-

cording to Thompson, Hunt stated that the defendant and he drank a few beers and drove to the Brown Mountain Gorge area. There defendant broke into McMillian's car and returned with the binoculars. Gentry's testimony was similar; he stated that Hunt had said

> "he looked up and saw that he was in the car and all [of] a sudden that he was coming back to the car and he had something in his hand like a case and also a pair of binoculars and he told him to put it back so he would not get him into trouble. He said that Dewey did not put them back and got in the car and rode up the road and that they got stopped.

"Q. What did the Defendant say to that statement by Oscar Hunt?

"A. He had no comment.

MR. BECK: OBJECTION.

COURT: OVERRULED.

"A. He said he did not want to get Oscar in trouble and he had nothing to say."

Thompson also testified that in response to Hunt's statement that the defendant was going to get them into trouble, the defendant "didn't want to make any comment." The trial judge instructed the jury that "the defendant was present and heard the statement of Hunt and . . . said nothing."

The admission of the testimony of Thompson and Gentry, as it pertained to accusations by Hunt and the defendant's response to them, was error. "It was formerly a general rule that silence might amount to an admission though the party (usually, of course, a criminal defendant) was in custody under a charge of crime, . . ." 2 Stansbury, N. C. Evidence § 179 (Brandis rev. 1973); see State v. Case, 253 N.C. 130, 116 S.E. 2d 429 (1960). However, the landmark case of Miranda v. Arizona, 384 U.S. 436 (1966), made it clear that "whenever an accused has been taken into custody and officers are present, evidence of an admission by silence is banned, at least as substantive evidence." 2 Stansbury, N. C. Evidence § 179 (Brandis rev. 1973) citing footnote 37 to the controlling opinion in Miranda v. Arizona, supra at 468.

Here defendant had been given the *Miranda* warnings and had the right to remain silent. His silence was not an implied admission of guilt and could not be used against him. It made no difference that Hunt, rather than the police, made accusations against the defendant. The defendant was in custody; he had been advised of his constitutional rights; and he was under no duty to make a response in the face of the accusations. The admission of this evidence was prejudicial error.

New trial.

Judges MORRIS and HEDRICK concur.